**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 19-cv-01371-REB-NYW

JODI SHELDON,

    Plaintiff,

v.

GOLDEN BELL RETREAT d/b/a THE COLORADO DISTRICT CHURCH OF THE NAZARENE, d/b/a GOLDEN BELL RANCH and GOLDEN BELL CAMP and CONFERENCE CENTER,
CROSS BEARING ADVENTURES, LLC,
KENT FIELDEN MCILHANY, an individual, and
JOHN DOE CORPORATIONS 1–10,

    Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

**Blackburn, J.**

The matters before me are (1) the **Motion for Summary Judgment on Plaintiff's Personal Injury Claims Against Golden Bell Retreat d/b/a The Colorado District Church of the Nazarene d/b/a Golden Bell Ranch and Golden Bell Camp and Conference Center** [#42],[1] filed January 21, 2020; and (2) **Defendants Cross Bearing Adventures, LLC's and Kent Fielden McIlhany's Motion for Summary Judgment** [#55], filed March 9, 2020.  I grant both motions and dismiss plaintiff's remaining claims with prejudice as against the named defendants and without prejudice as against the Doe defendants.

---

[1] "[#42]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

## I. JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. §1332 (diversity of citizenship).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).

## I. JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. §1332 (diversity of citizenship).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).

## III.  ANALYSIS

On June 29, 2018, plaintiff Jodi Sheldon was seriously injured while participating in a high ropes course at the Golden Bell Ranch ("Golden Bell").  Ms. Sheldon sued Golden Bell under Colorado's Premises Liability Act ("PLA"), §13-21-115, C.R.S.  She also brought a claim of negligence against Cross Bearing Adventures ("CBA"), the company which constructed and inspected the course and trained Golden Bell employees on the safety and facilitation of various aspects of the course, and its owner, Kent McIlhany.[2]

All three defendants claim Ms. Sheldon's claims are barred by a Waiver, Release and Indemnification Agreement (the "Waiver") which she signed on May 18, 2018, prior to participating in the high ropes course.  The Waiver provided, in relevant part,

> I wish to participate in recreational activities to be made available to participants at Golden Bell Camp including activities that may be hazardous or otherwise involve a risk of physical injury or death to the participants (the"Activities").
>
> I expressly assume any and all risks of injury or death arising from or relating to the Activities including horseback riding, agricultural recreation and waive and release any and all actions, claims, suits or demands of any kind or nature whatsoever against Golden Bell Camp, its corporate affiliates, contractors, vendors, officer, agents, sponsors, volunteers or representatives of any kind (collectively "Releases") arising from or relating in any way to my voluntary participation in these activities. I understand that this Waiver, Release and Indemnification agreement means, among other things, that if I am injured or die as a result of my participation in these activities, I and/or my family or heirs cannot under any circumstances sue Releases or any of

---

[2]  Ms. Sheldon's claims of negligence and fraudulent concealment against Golden Bell were dismissed previously as preempted by the PLA.  (*See* **Order Adopting Recommendation of the United States Magistrate Judge** [#35], filed January 8, 2020.)

>them for damages relating to or caused by my injuries or
>death.
>
>. . .
>
>I agree to indemnify Releases or any of them and their
>subrogees, if any, in the event of any loss, damage or claim
>arising from or relating in any way to my participation in any
>of the Activities.
>
>. . . .
>
>I have read this Waiver, Release and Indemnification
>Agreement, have asked and received answers to any
>questions I had concerning its meaning and execute it freely,
>without duress, and in full complete understanding of its
>legal effect, and of the fact that it may affect my legal rights.

(**CBA Motion App**., Exh. C, Attachment 2.)  Ms. Sheldon received the Waiver from her aunt[3] after having been given a list of activities offered at Golden Bell and indicating her interest in participating in the high ropes course.  (*Id.*, Exh. C, Attachment 1 at 25-26.)

To begin, Ms. Sheldon does not oppose Mr. McIlhany's motion to dismiss her claims against him personally.  The uncontested evidence supports Mr. McIlhany's assertion that all actions taken by him of which Ms. Sheldon complains were done in his capacity as a member, manager, and operator of CBA and that he never performed any services for Golden Bell in his individual capacity.  Ms. Sheldon's claims against Mr. McIlhany therefore will be dismissed with prejudice.

---

[3] Ms. Sheldon, who is a resident of Illinois, attended Golden Bell as part of a large family reunion.

As for Ms. Sheldon's claims against Golden Bell and CBA, they are precluded by the Waiver.[4] Because this case implicates the court's diversity jurisdiction, I apply Colorado law. *Wade v. EMASCO Insurance Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007). Exculpatory agreements "stand at the crossroads of two competing principles: freedom of contract and responsibility for damages caused by one's own negligent acts," *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 784 (Colo. 1989). Thus, although such agreements are generally disfavored, *see B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998), and cannot "shield against a claim for willful and wanton conduct, regardless of the circumstances or intent of the parties," *Boles v. Sun Ergoline, Inc.*, 223 P.3d 724, 726 (Colo. 2010), "Colorado common law does not categorically prohibit the enforcement of contracts seeking to release claims of negligence," *Espinoza v. Arkansas Valley Adventures, LLC*, 809 F.3d 1150, 1152 (10th Cir. 2016).

Colorado courts have identified four factors which inform the decision whether to enforce an exculpatory agreement: "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Brigance v. Vail Summit Resorts, Inc.*, 883 F.3d 1243, 1250 (10t Cir. 2018) (quoting

---

[4] I reject Ms. Sheldon's suggestion that I should defer ruling on this motion until after Golden Bell's Rule 30(b)(6) deposition is completed. Pursuant to Rule 56(d), to warrant such action, Ms. Sheldon must "show[] by affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition." FED. R. CIV. P. 56(d). No such affidavit or declaration has been submitted in support of Ms. Sheldon's request. The request also violates D.C.COLO.LCivR 7.1(d), which provides that "[a] motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." I therefore deny this request and consider the summary judgment motions as submitted.

*Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981)) (internal quotation marks omitted).

> The first two *Jones* factors focus on public policy questions – asking whether the party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity. Meanwhile, the latter two factors focus on more party – and contract-specific questions – asking whether the release was fairly obtained and clearly and unambiguously expressed.

*Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 639 (10th Cir. 2019) (internal citations and quotation marks omitted). "[I]f an exculpatory agreement satisfies any of the four factors, it must be deemed unenforceable." *Brigance*, 883 F.3d at 1250. The determination of this question is a matter of law for the court. *Jones*, 623 P.2d at 376. *See also Johnson v. Gold's Gym Rockies, LLC*, 2019 WL 1112374 at *3 (D. Colo. March 11, 2019).

The first two factors are generally inapplicable to businesses engaged in recreational activities, *Patterson*, 926 F.3d at 639; *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004), and the parties do not argue otherwise. *See also Brigance*, 883 F.3d at 1250-51, 1252-53 (citing cases). Nor is there any argument or evidence to establish that the third factor – whether the contract was fairly entered into – is applicable here. Indeed, because recreational activities are not considered either essential services or practically necessary, "a person is not 'at the mercy' of a business's negligence when entering an exculpatory agreement involving recreational activities." *Brigance*, 883 F.3d at 1253 (quoting *Hamill v. Cheley Colorado Camps, Inc.*, 262 P.3d 945, 949-50 (Colo. App. 2011)).

Thus, whether the Waiver is enforceable turns exclusively on the fourth factor, "whether the intention of the parties is expressed in clear and unambiguous language." *Jones*, 623 P.2d at 376. In analyzing this factor, the court focuses on whether the parties' intent to "extinguish liability . . . was clearly and unambiguously expressed." *Heil Valley Ranch*, 784 P.2d at 785.

> To determine whether the intent of the parties is clearly and unambiguously expressed, [Colorado courts] have previously examined the actual language of the agreement for legal jargon, length and complication, and any likelihood of confusion or failure of a party to recognize the full extent of the release provisions. [They] have even taken into account an injured party's subsequent acknowledgment that he understood the meaning of the provision.

*Chadwick*, 100 P.3d at 467 (internal citations omitted).

Ms. Sheldon insists the Waiver is ambiguous as to whether the high ropes course was within the scope of the activities covered. I am not persuaded. Here, the Waiver defined the term "Activities" as "recreational activities . . . *including* activities that may be hazardous or otherwise involve a risk of physical injury or death to participants." (Emphasis added.) The use of the term "including" plainly signifies that some – *but not all* – of the Activities covered by the Waiver will be hazardous or involve a risk of physical injury. Thus, even accepting Ms. Sheldon's suggestion that a high ropes course is not a hazardous activity,[5] her argument fails.

---

[5] Frankly, however, this argument strains credulity. I would be hard pressed to find that it is not inherently risky to be suspended many feet above the ground, regardless of safety measures taken to mitigate the risk. Moreover, Ms. Sheldon's subjective belief that the ropes course was not inherently dangerous is irrelevant. *See Brooks v. Timberline Tours, Inc.*, 127 F.3d 1273, 1275 n.1 (10t Cir. 1997) ("Plaintiffs' subjective intent is inadmissible to overcome the parties overt manifestation of intent in the releases because the language in these agreements is clear and unambiguous.") (citation and internal quotation marks omitted).

Nor does the Waiver's failure to refer specifically to the high ropes course render it ambiguous with respect to the type of activities covered.[6] Colorado law does not require "an exculpatory agreement describe in detail each specific risk that the signor might encounter." *Squires v. Breckenridge Outdoor Education Center*, 715 F.3d 867, 873 (10th Cir. 2013). Read in context, and considering not only its structure and language but also its purpose, the Waiver clearly and unambiguously applies to activities such as the high ropes course. *See Patterson*, 926 F.3d at 642. In this regard, Ms. Sheldon testified that prior to signing up for the high ropes course, she reviewed a list of activities offered by Golden Bell which, in addition to the high ropes course, also included "horseback riding," an activity specifically referenced in and covered by the Waiver. (**CBA Motion App.**, Exh. C, Attachment 1 at 25.) Moreover, nothing in the record suggests Ms. Sheldon would have been asked to sign a Waiver had she not requested to participate in the high ropes course. Given those circumstances, it "strains logic," *Squires*, 715 F.3d at 874, to suggest Ms. Sheldon was confused or misled as to the fact that she was being asked to waive potential claims of negligence associated with the high ropes course. *See also Hamill*, 262 P.3d at 952 (exculpatory waiver enforceable against parent who signed on behalf of minor child where parent knew activities that were offered at camp; "An agreement with such plain and unambiguous terms will not fail because one of the parties, in hindsight, now claims

---

[6] Ms. Sheldon's reliance on the district court's decision in *Schlumbrecht-Muniz v. Steamboat Ski & Resort Corp.*, 132 F.Supp.3d 1310 (D. Colo. 2015), is misplaced. There, although the agreement at issue clearly and unambiguously released the defendant from claims related to the plaintiff's participation in "the Event" (a ski race), it was not clear that it covered injuries the plaintiff sustained after she finished competing in that event. *See id.* at 1315. There is no such ambiguity here. Ms. Sheldon was injured while participating in the "activities" which were the subject of the Waiver.

to have misunderstood the scope of that agreement . . . based on ambiguities not readily apparent within the four corners of the agreement.").[4]

Relatedly, the Waiver also clearly bars Ms. Sheldon's claims against CBA. "A person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." ***E.B. Roberts Const. Co. v. Concrete Contractors, Inc***., 704 P.2d 859, 865 (Colo. 1985). The Waiver specifically protects Golden Bell's "contractors" and "vendors" from claims "arising from or relating in any way to [Ms. Sheldon's] voluntary participation in these activities." (**CBA Motion App.**, Exh. C, Attachment 2.) Clearly, the Waiver was intended to cover parties like CBA in precisely the situation presented by this lawsuit. Moreover, the benefit thus conferred is directly related to its purpose – to absolve such parties from liability for claims of negligence.

Ms. Sheldon's suggestion that the Wavier is ambiguous as to whether contractors and vendors are covered for all purposes or only when they are on site is meritless. The Waiver plainly is intended to have the broadest possible scope, applying to claims "arising from or relating *in any way*" to Ms. Sheldon's participation in the covered activities. Clearly, the parties intended to absolve contractors from claims they were negligent in any way in relation to the subject activities, regardless whether that negligence happened on site at the time of the event. I thus find and conclude that the

---

[4] I further reject Ms. Sheldon's argument that her claim of gross negligence against Golden Bell cannot be waived. Assuming such is the case as a matter of law, as a matter of fact, Ms. Sheldon failed to plead such a claim.

Waiver clearly and unambiguously bars Ms. Sheldon's claims against CBA as well.

Ms. Sheldon's remaining arguments attempting to avoid the effect of the Waiver are likewise unavailing. The Waiver does not fail for lack of consideration. Contrary to Ms. Sheldon's arguments, the mere lapse of time between her payment to participate in the activity and the date the waiver was delivered to Golden Bell is not fatal to its enforcement. Instead, the pertinent question is whether the release of liability was a contract modification or rather is part of the same transaction and thus enforceable without additional consideration. **See Patterson**, 926 F.3d at 638 ("[E]ven aside from the question of timing, we are persuaded based on the nature and circumstances of the transaction that the payment and exculpatory agreement here . . . are better viewed as part of the same transaction, rather than as a subsequent contract modification.") (citing **Mincin**, 308 F.3d at 1109).[5]

I am similarly unpersuaded by Ms. Sheldon's suggestion that the Waiver fails due to either unilateral or mutual mistake. The doctrine of mutual mistake permits a party to rescind a contract "if all parties labored under the same erroneous conception of the contract's terms and conditions." **In re Estate of Ramstetter**, 411 P.3d 1043, 1051 (Colo. App. 2016) (citation and internal quotation marks omitted). Ms. Sheldon has failed to prove by clear and convincing evidence that such is the case here. **Cabs, Inc.**

---

[5] In reaching its determination, the **Mincin** court relied on two state court decisions which reached similar conclusions. **See Mincin**, 308 F.3d at 1109 (citing **Beehner v. Cragun Corp.**, 636 N.W.2d 821, 829 (Minn. Ct. App.2001) ("This court has held that an exculpatory agreement signed after a fee to participate in a recreational activity has been paid is part of the same transaction and is therefore enforceable without additional consideration other than permission to participate in the activity."), **and Hewitt v. Miller**, 521 P.2d 244, 248 n.3 (Wash. App. 1974) (concluding that release signed by scuba diving student after payment of fee was an integrated part of the whole transaction and was thus supported by original consideration)).

*v. Hartford Insurance Group*, 151 Fed. Appx. 604, 610 (10th Cir. Aug. 31, 2005); *Maryland Casualty Co. v. Buckeye Gas Products Co.*, 797 P.2d 11, 13 (Colo. 1990).

For one thing, it is not clear that Ms. Sheldon's asserted mistake – that Golden Bell's high ropes course had been licensed by the state of Colorado – was sufficiently similar to Golden Bell's mistake – that it did not require such a license – to warrant application of the doctrine at all.[6] Assuming *arguendo* that it does, however, the doctrine of mutual mistake permits reformation of the contract "where both parties' understanding of their agreement is contrary to the terms of a written instrument due to a drafting error[.]" *Tatonka Capital Corp. v. Connelly*, 390 F.Supp.3d 1289, 1294 (D. Colo. 2019), *as modified on reconsideration*, 2019 WL 5535226 (D. Colo. Oct. 25, 2019), *appeal filed*, 2019 WL 5535226 (10th Cir. Nov. 25, 2019) (No. 19-1450). *See also Casey v. Colorado Higher Education Insurance Benefits Alliance Trust*, 310 P.3d 196, 207 (Colo. App. 2012) ("A mutual mistake claim requires a showing that both parties were laboring under the same erroneous conception of the contract's terms and conditions.") *See also Ranch O, LLC v. Colorado Cattlemen's Agricultural Land Trust*, 361 P.3d 1063, 1066-67 (Colo. App. 2015) (doctrine of mutual mistake applies only to mistakes going to a "basic assumption" underlying the contract).[7]

---

[6] At the time Ms. Sheldon participated in the high ropes course, the course was not licensed by the Colorado Division of Oil and Public Safety ("OPS") because Golden Bell believed itself subject to a "private event" exception, as its activities were available only to persons staying at the camp or its associated RV park and not open to the general public. However, because Golden Bell charged a separate fee for participation in activities at the camp to groups making use of the RV park, OPS found Golden Bell was not entitled to the benefit of this exclusion. Golden Bell resolved the violation by changing the way in which it offers its activities to guests of the RV park. OPS waived the fine assessed and considered the matter resolved as of August 23, 2019. (*See* **Pl. Resp. App**. [#52], Exh. J, **Golden Bell Motion App.**, Exhs. A & B.)

[7] Even where the doctrine of mutual mistake is otherwise applicable, however, a party is not entitled to reformation where she was "'aware, at the time the contract is made, that [she] ha[d] only limited knowledge with respect to the facts to which the mistake relates but treat[ed] [her] limited

11

No term of the contract here addressed whether Golden Bell had, or was required to have, a state-issued license.  Thus, any mistake as to that fact "did not create any ambiguity regarding the terms or substance of the [Waiver]." ***Shoels v. Klebold***, 375 F.3d 1054, 1067 (10th Cir. 2004), ***cert. denied***, 125 S.Ct. 1302 (2005). The Colorado Supreme Court long ago warned that courts "should not sanction, under the guise of reformation, the insertion in [contracts] of a new term or provision which was never even in the minds of the parties, let alone assented to by them." ***Segelke v. Kilmer***, 360 P.2d 423, 427 (Colo. 1961).  "To order reformation under these circumstances is to rewrite, not to reform, the instruments." ***Id.***  Just so here.  I thus find the Waiver is not infirm based on mutual mistake.

I likewise reject Ms. Sheldon's suggestion that she may avoid the waiver's effect under the doctrine of unilateral mistake.  "[A] unilateral mistake by one party to a contract can permit reformation if the evidence demonstrates that, at the time the contract was formed, the non-mistaken party was aware of the mistaken party's mistake." ***Tatonka Capital Corp.***, 390 F.Supp.3d at 1299.  Thus, one party's unilateral mistake may permit reformation where "the other engaged in fraud or inequitable conduct." ***Poly Trucking, Inc. v. Concentra Health Service., Inc.***, 93 P.3d 561, 563 (Colo. App. 2004). ***See also*** **R**ESTATEMENT **(S**ECOND**) OF C**ONTRACTS § 153 (contract may be avoided based on unilateral mistake where "(a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had

---

knowledge as sufficient.'" ***In re Estate of Ramstetter***, 411 P.3d 1043, 1051 (Colo. App. 2016) (quoting **R**ESTATEMENT **(S**ECOND**) OF C**ONTRACTS  § 154(b)).  Such is arguably the case here as well.

reason to know of the mistake or his fault caused the mistake"); **Shoels**, 375 F.3d at 1068 (quoting **Powder Horn Constructors, Inc. v. City of Florence**, 754 P.2d 356, 364 (Colo.1988) ("[E]quity will not allow a party to knowingly take advantage of a mistake of another.")).

None of these circumstances pertains here. It cannot be unconscionable to enforce an exculpatory contract which, like this one, is enforceable under Colorado law. Moreover, there is no hint in the record that Golden Bell knew or had reason to know that Ms. Sheldon did not know its high ropes course was not licensed by the state. Nor is there evidence to suggest Golden Bell was required to make its licensing status known to participants or that it purposefully hid its licensing status from Ms. Sheldon. At best, the evidence suggests Golden Bell's website made it appear the camp's activities were open to the general public, which if true would have rendered them subject to inspection and licensing by the state.[8] Yet there is neither argument nor evidence that Ms. Sheldon even consulted, much less relied on, Golden Bell's website in deciding to participate in the high ropes course or sign the Waiver.[9] I thus find and conclude that the Waiver is not voidable based on unilateral mistake either.

---

[8] *See supra*, note 6.

[9] These same reasons preclude Ms. Sheldon's belated assertion that Golden Bell engaged in fraud which would invalidate the Waiver. Otherwise, this argument is so woefully undeveloped and unsupported by citation to any legal authority that I decline to consider it. *See Bird v. Regents of New Mexico State University*, 619 Fed. Appx. 733, 766 (10th Cir. Aug. 6, 2015) (arguments which re "conclusory, unsupported, and undeveloped" "are insufficient to overcome summary judgment "); *Center for Biological Diversity v. Pizarchik*, 858 F.Supp.2d 1221, 1230 n.11 (D. Colo. 2012) (court does not consider "cursory, unsupported, or otherwise inadequately briefed arguments"). To the extent Ms. Sheldon believed she required further discovery to make this argument, she has forfeited any such argument. *See supra*, note 4.

## IV. CONCLUSION

For these reasons, the named defendants are entitled to summary judgment, and Ms. Sheldon's remaining claims against them will be dismissed with prejudice. Although the caption of this case named a number of unknown John Doe defendant corporations who may have had "ownership and control of the subject obstacle activity (**Complaint ¶ 10 at 3 [#1]**, filed May 13, 2019), with discovery now closed, Ms. Sheldon has not identified any such entities. These defendants therefore also should be dismissed, albeit without prejudice.[10] ***See Culp v. Williams***, 2011 WL 1597686 at *3 (D. Colo. April 27, 2011) (because Doe designation is not permitted where "plaintiff's ignorance of the defendant's true identity is the result of willful ignorance or lack of reasonable inquiry," Doe defendants dismissed where case had been pending for more than a year and plaintiff failed to show "good reason as to why [it] ha[d] been unable to obtain the true identity of these unnamed Defendants").

## V. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion for Summary Judgment on Plaintiff's Personal Injury Claims Against Golden Bell Retreat d/b/a The Colorado District Church of the Nazarene d/b/a Golden Bell Ranch and Golden Bell Camp and Conference Center** [#42], filed January 21, 2020, is granted;

2. That **Defendants Cross Bearing Adventures, LLC's and Kent Fielden**

---

[10] Without knowledge as to how any such corporations may be related to or associated with Golden Bell, it is impossible to say whether they would be covered by the Waiver and thus entitled to dismissal with prejudice. ***Cf. Roper v. Grayson***, 81 F.3d 124, 126 (10th Cir. 1996); ***Bustamante v. Board of County Commissioners of San Miguel County***, 2009 WL 10706928 at *5 n.7 (D.N.M. Oct. 2, 2009).

**McIlhany's Motion for Summary Judgment** [#55], filed March 9, 2020, is granted;

    3. That plaintiff's remaining claims against defendants are dismissed as follows:

        a. That the remaining claims of plaintiff against defendants, Golden Bell Retreat d/b/a The Colorado District Church of the Nazarene d/b/a Golden Bell Ranch and Golden Bell Camp and Conference Center; Cross Bearing Adventures, LLC; Kent Fielden McIlhany, an individual, are dismissed with prejudice; and

        b. That the remaining claims of plaintiff against defendants, John Doe Corporations 1 through 10 are dismissed without prejudice;

    4. That judgment shall enter as follows:

        a. That judgment with prejudice shall enter on behalf of defendants, Golden Bell Retreat d/b/a The Colorado District Church of the Nazarene d/b/a Golden Bell Ranch and Golden Bell Camp and Conference Center; Cross Bearing Adventures, LLC; and Kent Fielden McIlhany, an individual, and against plaintiff, Jodi Sheldon, as to all remaining claims for relief and causes of action asserted herein;

        b. That judgment without prejudice shall enter on behalf of defendants, John Doe Corporations 1 through 10, and against plaintiff, Jodi Sheldon, as to all remaining claims for relief and causes of action asserted herein;

    5. That judgment shall enter further in accordance with my **Order Adopting Recommendation of United States Magistrate Judge** [#35], filed January 8, 2020;

    6. That the combined Final Pretrial Conference and Trial Preparation

Conference scheduled for June 11, 2020, at 10:00 a.m., is vacated;

      7.  That the trial scheduled to commence on June 29, 2020, is vacated;

      8.  That defendants are awarded their costs, to be taxed by the clerk in the time and manner required by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

      9.  That this case is closed.

Dated April 20, 2020, at Denver, Colorado.

**BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge