**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 19-cv-1371-REB-NYW

JODI SHELDON,

      Plaintiff,

v.

GOLDEN BELL RETREAT d/b/a THE COLORADO
DISTRICT CHURCH OF THE NAZARENE,
d/b/a GOLDEN BELL RANCH and
GOLDEN BELL CAMP and CONFERENCE CENTER,

      Defendant.

---

## ORDER

---

**Blackburn, J.**

      The matters before me are (1) **Plaintiff's Notice of Acceptance of Remittitur** [#201],[1] filed September 6, 2022; (2) **Plaintiff's Motion To Amend the Final Judgment** [#177], filed June 3, 2022; and (3) **Plaintiff's Second Motion To Amend the Final Judgment** [#187], filed June 17, 2022.  I accept the remittitur, grant the original motion to amend the judgment to add an award of pre-judgment interest and clarify the award of post-judgment interest, and deny the second motion to amend, which seeks an award of additional costs not otherwise available under Rule 54(d).

      This case was tried on a jury on May 16-20, 2022, on plaintiff's claim under the Colorado's Premises Liability Act, § 13-21-115, C.R.S. ("PLA"), alleging gross

---

[1]  "[#201]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

negligence involving wilful and wanton conduct by defendant in the design and operation of its high ropes course.  The jury returned a verdict in favor of plaintiff and awarded her $750,000 in non-economic damages, $3,250,000 in economic damages, and $500,000 for physical impairment.

In resolving defendant's subsequent motion for judgment as a matter of law or new trial, I found the evidence adduced at trial did not support an award of more than $1,811,837.80 in economic damages, but an increase in the statutory cap on non-economic damages to the inflation-adjusted maximum of $936,030 was warranted on the facts of the case.  (***See* Order Re: Defendant's Renewed Motion for Judgment as a Matter of Law** [#199], filed August 24, 2022.)  Offered the option of either accepting remittitur of her economic damages or a new trial on the issue of damages (***see id.*** at 22 & ¶¶ 2-3 at 23), plaintiff chose remittitur.  Accordingly, the judgment will be amended to provide that plaintiff is entitled to $936,030 in non-economic damages, $1,811,837.80 in economic damages, and $500,000 for physical impairment, for a total award of $3,247,867.80.

Plaintiff's original motion to amend the judgment [#177] seeks prejudgment interest on the jury's award and clarification that post-judgment interest should be compounded annually.  By its response, defendant agrees plaintiff is entitled to prejudgment interest and that the rates requested were appropriate under applicable law.  It objects only to the extent plaintiff requests these additional damages on the total amount of the jury's award, as at the time the response was filed, defendant's motion for judgment as a matter of law or new trial was still pending.  Since that motion now has

been resolved, and the final amount of the award determined, there is no further dispute between the parties on the issue of prejudgment interest.  I concur that plaintiff is entitled to prejudgment interest at the rates specified in her motion, and that the judgment should be clarified to specify that the award of post-judgment interest should be compounded annually.

Thus, I find and conclude that plaintiff is entitled to the following: (1) prejudgment interest at the rate of 9.00% simple interest per annum on the amount of the judgment, to run from the date the cause of action accrued (June 29, 2018) to the date plaintiff filed suit (May 12, 2019); (2) prejudgment interest at the rate of 9% compounded annually on the total of (a) the amount of the judgment plus (b) the amount or prejudgment interest calculated in section (1) above, from the date suit was filed (May 12, 2019) to the date of judgment (May 20, 2022); and (3) clarification that the rate of post-judgment interest of 2.00% is to be compounded annually.  Provision for these additional amounts and clarification will be made by separate order directing amendment of the judgment.[2]

As part of the original judgment, plaintiff  was awarded costs under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  (**Judgment** at 2 [#174], filed May 20, 2022.) The clerk held a hearing on these matters and taxed costs in the amount of $11,206.02.

---

[2]  Plaintiff submitted three separate calculations of the amount of prejudgment interest she claims is due.  (**See Motion App.**, Exh. A; **Supplement to Plaintiff's Motion To Amend the Final Judgment To Include Pre-Judgment Interest** [#203], filed September 12, 2022; **Second Supplement to Plaintiff's Motion To Amend the Final Judgment To Include Pre-Judgment Interest** [#2034, filed September 30, 2022.)   The fact that plaintiff was required to amend her request repeatedly demonstrates why the court declines to specify an amount of prejudgment interest in the judgment: it eschews any need to amend the judgment repeatedly if an error is found in the prior calculation.  Following entry of the amended judgment, the parties are encouraged to agree on the correct figure between themselves.

(**See Bill of Costs** [#202], filed September 8, 2022.)  By her second motion to amend the judgment [#187], plaintiff seeks additional costs pursuant to Colorado state law. Because Rule 54(d) preempts the field, I deny this motion.

Plaintiff's motion invokes section 13-17-202(1)(a)(I), C.R.S., which provides:

> If the plaintiff serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the defendant, and the plaintiff recovers a final judgment in excess of the amount offered, then the plaintiff shall be awarded actual costs accruing after the offer of settlement to be paid by the defendant.

On January 10, 2020, plaintiff sent the following offer to defendant and its quondam co-defendant, Cross Bearing Adventures:

> This letter contains an offer of settlement . . . The offer assumes insurance coverage of the amount of $1,000,000 is available to Golden Bell and $250,000 to Cross Bearing Adventures.  This offer is for the limits of both policies.

(**Motion App.**, Exh. 1 at 1.)[3]  The offer provided it would expire in 21 days.  (**Id.**, Exh. 1 at 7.)   The offer was not accepted, and plaintiff subsequently recovered well in excess of $1,000,000.  She therefore seeks "actual costs" accruing after January 31, 2020, as provided by section 13-17-202(1)(a)(I), C.R.S.

---

[3]  The offer was not invalid simply because it was made to both defendants.  In **Taylor v. Clark**, 883 P.2d 569 (Colo. App. 1994), the court of appeals held that a "lump sum" "unapportioned" offer made to "multiple parties with distinct interests" which could "only be accepted by all the offerees acting in unison" did not invoke the cost-shifting provisions of the statute because "an individual offeree cannot independently weigh the benefit of accepting an unspecified portion of the offer against the likelihood of receiving a less favorable judgment."  **Id.** at 571.  Such clearly is not the case here.  Unlike the parties in **Taylor**, who were made an offer to settle for $10,000 collectively, without specifying how that amount was to be apportioned between them, **see id.** at 570, each defendant here was made a separate offer for the assumed limits of their respective insurance policies.  As such, each defendant was able to assess its own potential liability if plaintiff were to be awarded a judgment in excess of the offer.  Nor was there any indication the offer was conditioned on both defendants' acceptance.  In addition, and despite defendant's arguments to the contrary, there is no requirement that the offer be presented in any particular form or contain any particular words or references.  **See Dillen v. HealthOne, L.L.C.**, 108 P.3d 297, 301 (Colo. App. 2004), **cert. granted in part**, 2005 WL 333678 (Colo. 2005).

4

The first, seminal, question is whether section 13-17-202, C.R.S. conflicts with, and is thus preempted by, Fed. R. Civ. P. 54(d)(1). Until recently, the answer was clear. In *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170 (10th Cir. 2000), the plaintiff appealed a district court's denial of an award of costs under section 13-17-202(1)(a)(I), C.R.S. The court noted *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996), "sets forth the analysis for determining whether to apply a state rule of civil procedure:"

> where a federal rule of procedure is directly on point, that rule applies. Otherwise, in the "typical, relatively unguided *Erie* choice," courts are to heed the outcome-determination approach while also relying on the policies underlying the *Erie* rule: "discouragement of forum-shopping and avoidance of inequitable administration of the laws."

*Id.* at 1176 (quoting *Trierweiler*, 90 F.3d at 1539 (quoting *Hanna v. Plumer*, 380 U.S. 460, 467-68, 471, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965))). Applying this test to the question before it, the court concluded that "neither Fed. R. Civ. P. 68 nor 54(d) are 'directly on point:'"

> Rule 68 only governs defendants' costs, while plaintiffs' costs are the subject of the Colorado statute.[4] Neither, contrary to Wal-Mart's contention, does Fed. R. Civ. P. 54(d) necessarily conflict with an award of "actual" costs. "Under the rules of *Erie* and *Hanna*, Rule 54(d)(1) will . . . trump a state cost shifting provision with which it conflicts." But "[t]here is . . . no federal statute or rule providing the rule of decision when a federal court is asked to award litigation expenses other than those enumerated as section 1920

---

[4] That recognition puts paid to defendant's argument that the statute conflicts with, and therefore is preempted by, Fed. R. Civ. P. 68. *See also Delta Air Lines, Inc. v. August*, 450 U.S. 346, 350, 101 S.Ct. 1146, 1149, 67 L.Ed.2d 287 (1981) ("Rule 68 prescribes certain consequences for formal settlement offers made by 'a party defending against a claim.' The Rule has no application to offers made by the plaintiff.") (internal footnote omitted).

> costs."  In the present case, to the extent the Colorado
> statute authorizes the award of "actual costs" other than
> those costs authorized by 28 U.S.C. §§ 1821, 1920-23, or
> another federal statute or rule, those costs are not barred by
> Fed. R. Civ. P. 54(d)(1).

*Id*. at 1176-77 (internal citations and footnotes omitted).  Thus, the court remanded the case to the district court for an award costs "pursuant to Colorado law to the extent they constitute 'costs other than attorneys' fees' under Fed. R. Civ. P. 54(d)(1) and are not preempted by a federal statute such as 28 U.S.C. § 1821."  *Id.* at 1179.

Two decades later, the court had occasion to rethink the continuing viability of this standard.  In *Stender v. Archstone-Smith Operating Trust*, 958 F.3d 938 (10th Cir. 2020), the prevailing defendant, in addition to recovering more than $479,000 in costs under Rule 54(d), also was awarded $230,000 in costs not recoverable under the federal rule under the aegis of Colorado's general cost-shifting states, §§13-16-104, 13-16-105, & 13-16-122, C.R.S.  After reviewing the federal and Colorado law of costs, which showed "that some costs permitted under Colorado law are not permitted under Rule 54(d)," the court was faced with the question whether additional costs under state law "are nonetheless permissible in a diversity case."  *Id.* at 943.

The court concluded the answer to that question could be found in the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010).  Although *Shady Grove* addressed the interaction between Fed. R. Civ. P. 23 and a comparable state law limiting class actions, the Tenth Circuit found its analysis instructive on the question of how courts should determine whether a federal rule of procedure preempts a

6

complementary state rule.  Quoting from the majority's opinion in **Shady Grove**,[5] the

court distilled the following apposite test:

> "[T]he question before us," [the Supreme Court] said, "is
> whether [the state statute] *concerns a subject separate from
> the subject* of *Rule 23*."  The answer was easy: "Rule 23
> permits all class actions that meet its requirements, and a
> State cannot limit that permission by structuring one part of
> its statute to track Rule 23 and enacting another part that
> imposes additional requirements."  The essential point was
> that "[b]oth of [the New York statute's] subsections
> undeniably *answer the same question* as Rule 23:  whether
> a class action may proceed for a given suit."

**Stender**, 958 F.3d at 944 (internal citations omitted; emphases in **Stender**).  The court

thus noted that **Shady Grove** "is a critical case on the choice-of-law analysis," citing

prior precedents in which it had relied on the test articulated therein to determine the

relationship between federal and state law.  **Id.** at 945.

Applying that test to the case before it, the court found the conclusion

inescapable.  On the question "whether the state laws 'answer the same question' as

the Federal Rule," the court was emphatic: "They certainly do:"

> Rule 54(d) and Colorado's §§13-16-104 and -105 tell the
> courts what costs can be awarded to a prevailing party.  The
> subjects of the Federal Rule and the state statutes are the
> same.  We cannot artificially divide each Colorado statute
> and say that the statute (1) addresses the same subject
> matter as the Federal Rule when it allows those costs
> permitted by the Federal Rule and (2) then addresses a
> different subject when it allows costs for other expenses
> incurred by litigants that are impermissible under the Rule.
> Both of these "components" of the Colorado statute would
> still answer the same question as Rule 54(d).

---

[5] There were three opinions in **Shady Grove**.  The one on which the **Stender** court relied was the
opinion authored by Justice Scalia, which was joined in full by three other Justices and in part by Justice
Stevens, "making that part a majority opinion."  **Stender**, 958 F.3d at 943.

7

*Stender*, 958 F.3d at 945-46 (internal citations omitted).  Nor could the two statutes be reconciled, as Rule 54(d) provided a court with no discretion to award costs beyond those specifically enumerated in 28 U.S.C. § 1920.  *Id.* at 946.  Accordingly, the court concluded the defendant was not entitled to costs under Colorado's general cost-shifting statutes.

Because the *Stender* court specifically "le[ft] for another day" the question how application of the "answers the same question" test might impact its decision in *Garcia* interpreting the interplay between Rule 54(d), Rule 68, and section 13-17-202(1)(a)(I), C.R.S., *see id.* at 948, that determination now falls to this court.  Because the logic of *Stender* is equally applicable to costs sought under section 13-17-202(1)(a)(I), C.R.S., I must conclude plaintiff is not entitled to additional costs under that statute.

As *Garcia* itself noted, Rule 68 and the Colorado statute are not in conflict because the federal rule addresses only offers of settlement made by a later-prevailing defendant, whereas the state law is concerned with offers made by a plaintiff.  *See Garcia*, 209 F.3d at 1176.  It thus is clear these two laws do not answer the same question.  *But see Cribari v. Allstate Fire & Casualty Insurance Co.*, 861 Fed. Appx. 693, 714 (10th Cir. 2021) (Rule 68 does answer same question, and thus preempts, section 13-17-202(1)(a)(II), C.R.S. pertaining to offers of judgment made by defendants).

Nevertheless, I reject plaintiff's apparent suggestion that Rule 54(d) is inapplicable here because it governs only in situations in which an offer of settlement has not been made.  (*See* **Motion** at 3-4.)  "[T]he term 'costs' in Rule 68 was intended

to refer to all costs properly awardable under the relevant substantive statute or other authority," ***Marek v. Chesny***, 473 U.S. 1, 9, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1985), and thus "the costs which are subject to the cost-shifting provisions of Rule 68 are those enumerated in 28 U.S.C. § 1920, unless the substantive law applicable to the particular cause of action expands the general § 1920 definition," ***Knight v. Snap-On Tools Corp.***, 3 F.3d 1398, 1404 (10th Cir. 1993) (citation and internal quotation marks omitted).  Because the limits of Rule 54(d) are likewise bounded by the costs specified in section 1920, ***see Crawford Fitting Co. v. J. T. Gibbons, Inc.***, 482 U.S. 437, 441-42, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987), I am bound to conclude that the costs available under the two rules are generally co-extensive, absent circumstances not applicable here.[6]

As to whether Rule 54(d) and section 13-17-202(1)(a)(I), C.R.S. answer the same question, the logic of ***Stender*** is inescapable.  Both address the availability of costs, and the scope of costs available is the same regardless whether an offer of judgment has been made (again, absent specific statutory provision for additional costs).  No longer can the court "artificially divide" section 13-171202(1)(a)(I), C.R.S. into two parts to say it "addresses the same subject matter as the Federal Rule when it allows those costs permitted by the Federal Rule" but "addresses a different subject when it allows costs for other expenses incurred by litigants that are impermissible under the Rule."  ***Stender***, 958 F.3d at 945-46.  Rule 54(d) provides the answer as to all costs, those which are available and those which are not.

---

[6]  Plaintiff does not argue that the PLA authorizes additional costs not otherwise available under section 1920.

There thus is no room for the state law to operate.  Although section 13-17-202(1)(a)(I), C.R.S. is broader in scope than Fed. R. Civ. P. 54(d), the fact remains that both address the availability of costs to a prevailing party.  I see no daylight between the court's resolution of this issue in **Stender** and the question presented for determination here.  The federal rule prescribes the species of costs available to a successful litigant in all circumstances, not only when she prevails after making an offer of judgment.  That prescription trumps the state of Colorado's determination that a broader class of costs should be available in the circumstances described in section 13-17-202(1)(a)(I), C.R.S.

I have not discussed previously – and plaintiff has not addressed at all – the second part to the **Shady Grove** test:  whether application of the federal rule was constitutional as a valid exercise of Congress's powers under the Rules Enabling Act.  **See Shady Grove**, 130 S.Ct. at 1437, 1442-43.  Nevertheless, given the **Stender** court's clear determination that Rule 54(d) passes muster under both the test adopted by Justice Scalia's plurality opinion and the one proposed by Justice Stevens in his concurrence, **see Stender**, 958 F.3d at 946-47, I am in no position to conclude otherwise.  Accordingly, plaintiff's motion seeking an award of additional costs must be denied.[7]

---

[7] I note that if **Garcia** were still good law in this circuit, plaintiff would not be entitled to many of the categories of damages she requests by her motion.  Even under **Garcia** and its progeny, the actual costs available include only those categories of costs not otherwise addressed by Rule 54(d) and 28 U.S.C. §§ 1821 & 1920. **See Garcia**, 209 F.3d at 1177 n.5, 1178-79 & n.10.  **See also Home Loan Investment Co. v. St. Paul Mercury Insurance Co.**, 78 F.Supp.3d 1307, 1321-22 (D. Colo. 2014), **as amended**, 2014 WL 7187153 (D. Colo. Dec. 17, 2014), **aff'd**, 827 F.3d 1256 (10th Cir. 2016), **and aff'd**, 827 F.3d 1256 (10th Cir. 2016).  Thus, because section 1920 specifies the availability of costs for witnesses, plaintiff would not be entitled to any additional costs for its expert witnesses.  **See Atlas Biologicals, Inc. v. Kutrubes**, 2020 WL 3893566 at *7-8 (D. Colo. July 10, 2020), **aff'd**, 2022 WL 2840484 (10th Cir. July 21, 2022); **Bullock v. Wayne**, 2010 WL 1258038 at *2 (D. Colo. Mar. 29, 2010). Likewise, no further costs could be awarded for copying or court reporter fees associated with procuring a real time transcript.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Plaintiff's Notice of Acceptance of Remittitur** [#201], filed September 6, 2022, is accepted;

2.  That **Plaintiff's Motion To Amend the Final Judgment** [#177], filed June 3, 2022, is granted;

3.  That **Plaintiff's Second Motion To Amend the Final Judgment** [#187], filed June 17, 2022, is denied; and

4.  That by separate order, the court will direct the entry of an amended judgment consistent with this order.

Dated November 9, 2022, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

---

Other items which are sought simply are not recoverable in any event. Costs otherwise allowable for a witness may not be reimbursed for plaintiff herself. **Home Loan Investment Co.**, 78 F.Supp.3d at 1322 (citing JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § [sic] 54.103[3][c] (3rd ed.1999)). In addition, under Colorado law, "[m]eal expenses are not awardable because they are not attributable to the litigation: counsel would need to eat regardless of any litigation." **Murphy-Sims v. Owners Insurance Co.**, 2019 WL 3778306 at *8 (D. Colo. Aug. 12, 2019), **appeal dismissed**, 2020 WL 913437 (10th Cir. Jan. 24, 2020) (citation and internal quotation marks omitted).

Nor am I convinced that all the costs sought are reasonable. **See id.** (costs not listed in Colorado statute nevertheless may be awarded"so long as the requesting party proves that the expenses were reasonable and necessarily incurred") (citation and internal quotation marks omitted). For example, plaintiff does little to explain why it was necessary to engage a paralegal from its Seattle office to staff this case, rather than someone from its local offices, who could have attended trial without incurring such substantial travel expenses. I likewise would have found myself hard-pressed to conclude it was reasonable or necessary for plaintiff to expend over $2,300 on focus groups in this case.

11